## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JT CLEARY, INC.,<br><br><br>Plaintiff,<br><br>v<br><br><br>NARRAGANSETT ELECTRIC COMPANY d/b/a<br>NATIONAL GRID PLC,<br><br><br>Defendant. | Civil Action No.:1:22-cv-04533<br><br>Department: 1<br><br><br>[Proposed] Protocol Regarding Discovery and<br>Production of Electronically Stored Information<br>(ESI)<br>and Protection of Confidential Information |

Plaintiff, JT CLEARY, INC. ("JTC") and Defendant, NARRAGANSETT ELECTRIC COMPANY d/b/a NATIONAL GRID PLC ("National Grid") (collectively, "the Parties"), by their respective counsel in the above-captioned matter (the "Matter"), stipulate and agree that the following discovery protocol (the "ESI Protocol") shall govern the search and production of electronically stored information ("ESI") and the production of paper documents in electronic form.  This agreement shall also govern the designation and treatment of confidential information in this matter.  The Parties reserve the right to modify this ESI Protocol as discovery progresses.

I.    GENERAL PROVISIONS

A.    To the extent that documents produced pursuant to this ESI Protocol cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format.

B.    Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections

as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

C.     Nothing in this ESI Protocol is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties to object to a Request for Production of Documents.

D.     If a dispute arises related to interpretation or modification of this ESI Protocol, the Parties shall first meet and confer in good faith to resolve the dispute between themselves.  If the Parties are unable to resolve the dispute after a good faith effort, either Party may request the assistance of the Court.

E.     Regardless of whether or not a document is marked "Confidential," as described in Section VII(b) below, neither Party shall use any produced document for any purpose other than the prosecution/defense of claims in this Matter.  This clause shall not be read to restrict a Party's ability to use its own documents or documents available to the public in any manner.

II.     PRODUCTION FORMAT

A.  Document Format

ESI shall be produced in native format with Metadata intact, except where this is not practicable.  If it is not practicable for the responding party to produce ESI in Native format, the responding party will promptly notify the requesting party of the issue and the parties will attempt to agree upon an alternative format that is acceptable to the requesting party.

B.  Redacted Documents

Documents that require redaction will be produced in single-page TIFF images with original unitization preserved. After redaction, the remaining, un-redacted content of each document should be extracted by optical character recognition (OCR) or another suitable method to a searchable text file. Redactions should not be accomplished in a manner that serves to

downgrade the ability to search the un-redacted portions of the document.

    C.  Load File

Each Party's production shall include load files for Metadata in .DAT files and redacted images in an .OPT file.  The Metadata load files shall include the Metadata fields listed in Exhibit A.

    D.  Naming of Files

Each document shall have a unique Bates number. File names should not be more than fifteen characters long or contain embedded spaces, hyphens, commas, underscores, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-name convention.

The Bates Number for documents produced by JTC shall begin with the prefix "JTC."  The Bates Number for documents produced by National Grid shall begin with the prefix "NECO."

When producing a file in native format, the Native File shall be named with the Bates number as the file name.

    E.  <u>Document Unitization</u>

If a document is more than one page, the Parties shall make reasonable efforts, consistent with reasonable production practices, to provide the logical unitization of the document and any attachments and/or affixed notes as they existed in the original document.

    F.  <u>Searchable Text</u>

Document level text files corresponding to the native files described above.

1.  Hard copy documents shall be either (1) made available for the opposing Party to inspect and select for copying; or (2) if the Producing Party opts to produce hard copy

documents electronically, scanned using Optical Character Recognition ("OCR") technology.  If produced electronically, each file shall be named with the unique Bates Number.

2.  The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text (".txt") file.  The Extracted Text shall be provided in searchable ASCII format and shall be named with the unique Bates Number of the corresponding TIFF document followed by the extension ".txt."   Each Party will make reasonable efforts to generate text files via OCR if no extractable text is available.

3.  Documents produced with redactions shall be scanned using OCR technology, and a single searchable ASCII text format file shall be produced for each document.  Each file shall be named with the unique Bates Number of the corresponding TIFF document followed by the extension ".txt."

G.  Original Documents

Nothing in this ESI Protocol shall eliminate or alter any Party's obligation to retain Native Format copies, including associated metadata, of all ESI produced in this litigation and original documents produced in this litigation which originated as hard copy documents.

H.  De-Duplication, De-NISTing, Parent/Child Integrity

A Party is only required to produce a single copy of a responsive document. Parties may de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash Value matching.  ESI that is not an exact duplicate may not be removed.  Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.  Attachments to emails shall not be eliminated from the parent email.  To the extent the Parties de-duplicate stand-alone electronic documents against an e-mail attachment, the attachment to the e-mail must

be the document that is produced.  To the extent the document is responsive, the attachment and family will be produced.

      I.  <u>Color</u>

All common image file types (JPG, JPEG, PNG, RAW, GIF, BMP, etc.) will be produced in color.  Any other documents, regardless of document type, which contain any text, symbols, images, etc. that are in color, shall be produced in color.

**III.**     **SCOPE OF DISCOVERY**

The Parties shall exchange Requests for Production of Documents consistent with the requirements and deadlines set forth in the Joint Preliminary Scheduling Order as well as any further orders or directions of the Court.  The Parties are currently negotiating custodian lists and electronic search terms to narrow the scope of discovery at this time.  The Parties each reserve the right to expand the scope of discovery at a later date. In the event that additional discovery is required, the Parties agree to meet and confer in good faith to minimize the burden imposed by additional discovery. In no way is this section intended to limit necessary additional discovery including, without limitation, interrogatories, depositions, and request for production of documents.

**IV.**     **INACCESSIBLE DATA**

The Parties agree that the circumstances of this case do not warrant at this time the collection, review or production of ESI that is not reasonably accessible or not readily preserved, because it is unlikely that significant relevant information would be located in those sources that is not otherwise available in readily accessible sources.  Moreover, the remote possibility of locating responsive information at this time is substantially outweighed by the burden and cost of collection, review, and production of ESI from those sources.

The Parties agree that the following ESI need not be collected or reviewed for production at this time:

A.     Deleted, slack, fragmented, or other files or data only accessible by forensics;

B.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

C.     On-line access data such as temporary internet files, history, cache, cookies, and the like;

D.     Data contained on backup tapes;

E.     Server, system or network logs;

F.     Encrypted data/ password-protected files, where the key or password cannot be ascertained after reasonable efforts;

G.     Voicemail, except for voicemail, if any, that is converted to text and forwarded to a Custodian's email account;

H.     Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage); and,

I.     Text messages, personal email accounts, and social media accounts.

V.     PRIVILEGED DOCUMENTS

   A. Clawback Agreement

Inadvertent production of documents or information subject to attorney-client privilege, work-product immunity, or any other applicable privilege or immunity shall not constitute a waiver of, nor a prejudice to, any claim that the documents or information or related material is privileged

or protected by attorney-client   privilege, work-product immunity, or any other applicable privilege or immunity, provided that the producing party notifies the receiving party in writing promptly after it discovers the inadvertent production.  No demonstration or proof of error, inadvertence, excusable neglect, or absence of negligence shall be required of the producing party in order for such party to avail itself of the protections of this section.

If the producing party provides notice to the receiving party that it considers a document it produced to contain or constitute material subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity, the receiving party shall (a) use its best efforts to retrieve any copies of the document that it may have disseminated to third parties; and (b) within ten days after the producing party's notice, either (i) return all copies of the documents in its possession to the producing party; (ii) certify that all copies of the document in its possession have been destroyed; or, (iii) notify the producing party in writing that it will contest the producing party's claim that the document is subject to attorney-client privilege, work-product immunity, or other applicable privilege or immunity.  If the receiving party opts to contest the producing party's claim of privilege, the receiving party shall sequester the identified documents and not use them for any purpose until the privileged status of the documents is resolved.

If the receiving party discovers it has received documents that the party knows or reasonably should know was protected by attorney-client or work product privileges, such party shall promptly notify the producing party, in writing, of the disclosure.  If requested to do so, the receiving party shall delete or, if deletion is not feasible, segregate the privileged document, and shall not use such information for any purpose.

Nothing herein shall preclude any party from asserting at any time an objection to the use of any documents for any purpose and at any time during the course of this litigation on the basis

that it is privileged.

B. Privilege Logging Procedure

The parties agree that for documents redacted or withheld from production on the basis of attorney-client privilege or the work product doctrine and/or any other applicable privilege, the responding party will provide an updated summary log with each production of privileged material, in an electronically searchable format (*e.g.*, Excel) containing (for each document claimed as privileged) a description of those documents consistent with and as required by Federal Rule of Civil Procedure 26(b)(5)(A).  .

The parties agree that communications sent or documents generated after the filing of the Complaint in this action on June 1, 2022 will not be contained in the privilege log.

VI.   PERSONALLY IDENTIFIABLE, CONFIDENTIAL, AND EXPORT-CONTROLLED INFORMATION

A.  Personally Identifiable Information

   i.   The Parties will endeavor to redact personally identifiable information ("PII") from documents prior to production.  To the extent that documents containing unredacted PII are produced, the Parties agree that all documents containing PII will be kept confidential and not disseminated or used for any purpose other than for the purpose of resolving the claims at issue in the Matter.  If a Party determines that a produced document contains unredacted PII, that Party will redact the PII prior to submitting the document to the Court.

B.  Confidential Information

   i.   A Party producing documents (the "Producing Party") to an opposing Party (the "Receiving Party") may designate documents containing trade secret, commercially sensitive, or proprietary information as "Confidential" by marking a document with a "Confidential" stamp on

the bottom of the document before producing the document to the Receiving Party.

    ii.    Subject to the conditions below, documents marked with a "Confidential" stamp ("Confidential Documents") may only be shared with and reviewed by the attorneys, consultants, and employees of the Receiving Party who are assisting attorneys in the prosecution/defense of claims in this litigation, who agree in writing to be bound by the terms of this agreement. Confidential Documents shall not be viewed by, or disseminated to, employees of the Parties not assisting in the litigation or to other third parties.

    iii.    The parties incorporate by reference the Stipulated Protective and Claw-back Order as entered by the Court.  Nothing contained herein shall be interpreted or construed as altering the terms of that document.

    SO ORDERED.

    DATED: August 18, 2022

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Agreed to by counsel for the Parties on August 17, 2022.

SMITH, CURRIE & HANCOCK, LLP

PIERCE ATWOOD LLP

By:_/s/ Karissa L. Fox_____
Lochlin B. Samples
Georgia Bar Number 303893
lbsamples@smithcurrie.com
Karissa L. Fox
California Bar Number 322037
klfox@smithcurrie.com
245 Peachtree Center Ave., NE
Suite 2700, Atlanta, CA 30303
T: 404-521-3800
Attorneys for Plaintiff, JT Cleary, Inc.

By:__/s/ R. Thomas Dunn_____

R. Thomas Dunn, Esq.
One Financial Plaza
26th Floor
Providence, RI 02903
Phone: (401) 490-3418
Fax: (401) 588-5166
rtdunn@pierceatwood.com
*Attorney for Narragansett Electric Company d/b/a/ National Grid PLC*

## <u>EXHIBIT A</u>

<u>ESI PRODUCTION METADATA FIELDS</u>:

- ProdBeg: Beginning Bates Number

- ProdEnd: Ending Bates Number

- ProdBegAttach:  Beginning Bates number of the first document in an attachment range

- ProdEndAttach:  Ending Bates number of the last document in attachment range

- PageCount

- Custodian: Name of the Custodian of the File(s) Produced – Last Name, First Name format

- DocExt:  Document Extension is the File extension of the native file.

- FileName:  Filename of the original digital file name

- Filesize:   Size of native file, in bytes.

- EmailSubject:  Subject line extracted from an email message

- Title: Title field extracted from the metadata of a non-email document

- Author:  Author field extracted from the metadata of a non-email document

- From:  From field extracted from an email message

- To: To or Recipient field extracted from an email message

- Cc:  CC or Carbon Copy field extracted from an email message

- BCC:  BCC or Blind Carbon Copy field extracted from an email message

- DateRcvd:  Received date of an email message (mm/dd/yyyy format)

- DateSent:  Sent date of an email message  (mm/dd/yyyy format)

- DateCreated:  Date that a file was created  (mm/dd/yyyy format)

- DateModified:  Modification date(s) of a non-email document

- Fingerprint:  MD5 or SHA-1 has value generated by creating a binary stream of the file

- ProdVolume:  Identifies production media deliverable

- Redacted:  "Yes," for redacted documents; otherwise, blank

- TimeSent :  Time the e-mail message was sent provided in GMT and offset to the particular time zone of the Sender

- TimeCreated:  Creation time of the native file.

- Time Modified: Time a non-email document was modified

- Confidentiality: Confidentiality designation of the produced record.

- Record Type: ie. E-DOC, Email, EmailAttach

- NativePath:  Path and filename to produced Native file

- ExtractedText: File path to Extracted Text/OCR File

- OriginalFolderPath: The original source path/folder for each native document

- ConversationIndex: Microsoft Outlook specific email thread identification

PAPER DOCUMENTS METADATA FIELDS:

- ProdBeg: Beginning Bates Number

- ProdEnd: Ending Bates Number

- ProdBegAttach:  Beginning Bates number of the first document in an attachment range

- ProdEndAttach:  Ending Bates number of the last document in attachment range

- Custodian: Name of the Custodian of the File(s) Produced – Last Name, First Name format

- ProdVolume:  Identifies production media deliverable

- Pages: The number of imaged pages per document i.e. Page count

- Redaction: "Yes," for redacted documents; otherwise, blank

- Confidentiality: Confidentiality designation of the produced record

- ExtractedText: File path to Extracted Text/OCR File