**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
JT CLEARY, INC.,

                               Plaintiff,

                   -against-

NARRAGANSETT ELECTRIC COMPANY,
d/b/a NATIONAL GRID, PLC,

                             Defendant.
-------------------------------------------------------------------X
NARRAGANSETT ELECTRIC COMPANY,

                       Counterclaim Plaintiff,

                   -against-

JT CLEARY, INC.,

                       Counterclaim Defendant.
-------------------------------------------------------------------X

**22-CV-4533 (JLR) (VF)**

**<u>OPINION & ORDER</u>**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

     Plaintiff JT Cleary, Inc. ("Plaintiff") commenced this action on June 1, 2022, against Defendant The Narragansett Electric Company ("Defendant"), alleging that Defendant breached its contract with Plaintiff, pursuant to which Plaintiff was to install an HDPE pipe (the "Conduit") under the sea floor off the coast of Block Island, Rhode Island. <u>See</u> ECF Nos. 1, 6. Defendant brought breach-of-contract and breach-of-warranty counterclaims against Plaintiff, arising from the collapse of the same contractual relationship, and alleging that Plaintiff delivered a sand and debris-filled Conduit that did not meet the contract's specifications. <u>See</u> ECF No. 35. Before the Court are two letter motions filed by Plaintiff, seeking to strike the supplemental reports submitted by Defendant's experts. <u>See</u> ECF Nos. 93, 94. For the reasons explained below, Plaintiff's letter motions are DENIED.

## BACKGROUND[1]

On December 1, 2023, the Court ordered the parties to exchange expert disclosures by March 15, 2024. See ECF No. 72. On March 14 and 15, 2024, Defendant served two expert reports on Plaintiff, one prepared by Rachel Mosier and the other by Brian Dorwart. See ECF No. 93-1; ECF No. 94-1. Defendant retained Ms. Mosier, who is employed by an engineering consulting firm specializing in design and installation support for underground and submarine cables, to evaluate the design of the project, the cleaning and testing of the Conduit, and the installation of a cable in the Conduit. See ECF No. 93-1 at 3-5.[2] Defendant retained Mr. Dorwart, a geologist and geotechnical engineer, to opine on whether Plaintiff adequately secured the ends of the Conduit such that sand and debris would not enter the Conduit. See ECF No. 94-1 at 3-4. Ms. Mosier and Mr. Dorwart were retained to opine on those aspects of the Conduit because Defendant wanted a power cable to pass through the entirety of the Conduit, but the Conduit Plaintiff installed had sand and debris in it, which Defendant contends did not allow for a cable to pass through. See ECF No. 93-1 at 3-4; see also ECF No. 35 at Counterclaim ¶¶ 52-54.

Ms. Mosier was deposed by Plaintiff on April 5, 2024. See ECF No. 93-2. Mr. Dorwart was deposed by Plaintiff on April 12, 2024. See ECF No. 94-2. Under the Court's scheduling order, expert discovery closed on April 15, 2024. See ECF No. 72 at ¶ 8. On May 29, 2024,

---

[1] The parties' familiarity with the facts of this case is presumed. Only the facts relevant to the instant dispute are discussed herein.

[2] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the ECF-generated pagination in those documents, except for citations to the transcripts at ECF Nos. 93-2, 94-2, and 107, which are to the original pagination in those transcripts.

Defendant disclosed two supplemental reports, prepared by Ms. Mosier and Mr. Dorwart. See

ECF Nos. 93-3; 93-4; 94-3; 94-4.

    A.  Rachel Mosier's expert opinion

In Ms. Mosier's expert report, she opined that Plaintiff failed to provide a clean Conduit,

and that, as a result, there were excessive pulling tensions, prohibiting the cable from passing

through the Conduit. See ECF No. 93-1 at 5. As Ms. Mosier explained, debris in the Conduit can

increase the force required to pull the cable into the Conduit, and thus the cable installation in the

Conduit scheduled for the spring of 2021 did not occur, because LS Cable Systems America, Inc.

("LS Cable"), the cable manufacturer, determined that the amount of debris in the Conduit

created an unacceptable risk of damage to the cable. Id. at 5-7, 15; see also id. at 11-12

(explaining that debris poses a significant risk of increasing the friction between the cable and

the Conduit, including creating excessive pulling tensions on the cable).

In her deposition, Ms. Mosier was asked if she calculated the pulling tension on the cable.

See ECF No. 93-2 at 25-26. She testified that she did not and added that she did not "offer an

opinion on the pulling tension of the cable." Id. at 28. Ms. Mosier further explained that the cable

manufacturer, LS Cable, determined the maximum pulling tension allowed, noting that the

pulling tension calculation "has nothing to do with how you're pulling the cable." Id. at 25-28.

Ms. Mosier was asked whether the pulling tension would vary based on whether the cable was

being pulled by the "armor" or the "core" of the cable. Id. at 27. Ms. Mosier testified that there

are two types of armor for "submarine cables" and with a "single-helix armor cable," as was

found in this project, you are not pulling on the "armor" itself and the vast majority of the

tension caused by the pull would be on the core. Id. at 21-23, 160. Ms. Mosier was asked if, in

this case, there was a "pulling eye" with "armor whips" and she testified that she had not seen

"the cutaway of the pulling eye" and would need to see how the "pulling eye was manufactured."

Id. at 23-24. Ms. Mosier nevertheless testified that it did not matter what the "pulling eye looks

like" because "[y]ou cannot pull on a single-wire armor" and would have to assume that you are

pulling on the "conductor" and not the "armor." Id. at 160-61. Ultimately, Ms. Mosier testified

that despite not knowing how the pulling head was attached to the cable in this case, because the

cable was a single-helix armor cable, she would assume the cable was pulled by the core (or

conductor) and not the armor. Id. at 159-163.

In Ms. Mosier's supplemental report, she explains that she learned after her deposition of

a January 2020 schematic of the cable's pulling head, prepared by LS Cable. See ECF No. 93-4

at 2. Ms. Mosier also learned of a table with the specifications of the cable and the actual

allowable pulling tension for the cable. See id. at 3. Through these newly identified materials,

Ms. Mosier discovered that the pulling head on the cable was attached to the armor, which meant

that the cable was pulled by the armor (and not the conductor or core as she had assumed during

her deposition). Id. Ms. Mosier explains that the fact that the cable was pulled by the armor

would affect how the cable manufacturer determines the maximum allowable pulling tension, but

it did not affect the calculation of the expected pulling tension, as she had testified during her

deposition. Id. at 3-4.

B.  Brian Dorwart's expert opinion

In his expert report, Mr. Dorwart opined that Plaintiff failed to adequately secure the ends

of the Conduit, causing debris and sand to enter the Conduit. See ECF No. 94-1 at 3.

Specifically, Mr. Dorwart opined that "JT Cleary insufficiently maintained the construction and

4

specifications of the gravity cell during installation and testing of the Conduit on January 31,

2021," creating the "opportunity for sand to enter the sea end of the Conduit." See id. at 8. Mr.

Dorwart also opined that Plaintiff failed to adequately secure end caps that would "prevent

foreign material from entering the Conduit." Id. at 11. Mr. Dorwart did not quantify the amount

of debris or sand in the Conduit. See ECF No. 94-2 at 110.

Further, Mr. Dorwart explained that Plaintiff did not properly clean the Conduit when

Plaintiff passed proofing mandrels through the Conduit because "a proofing [m]andrel is not for

cleaning" and "sand can be observed in photographs" of the Conduit on days that Plaintiff ran

mandrels through the Conduit. See ECF No. 94-1 at 8-10. Specifically, he opined that the

pressure washing performed on April 13, 2021 was not successful, because the obstruction

stopped the pressure washing nozzle "about 138 feet from the manhole." Id. at 17. Mr. Dorwart

further explained in his report that the presence of sand and debris in the Conduit caused high

pull tensions, precluding mandrels from successfully passing through the Conduit without

damage or without getting stuck. Id. at 7, 19-20. Lastly, Mr. Dorwart opined that the flushing

procedures performed by Defendant on April 5, 2021, and May 5, 2021, were not effective in

removing the debris from the Conduit but did not introduce "significant amounts of new material

into [the] Conduit." Id. at 18. Ultimately, Mr. Dorwart opined that Plaintiff "insufficiently

maintained the gravity cell after the Conduit sea end was in its final position," thereby providing

an opportunity for "sand to enter the sea end of the Conduit," and subsequently failed to clean

the Conduit to remove the debris. Id. at 19-20.

During his deposition, Mr. Dorwart was asked if he relied on any "peer reviews or

publications" to support his opinion, and he testified that "[t]he manner of friction and how much

frictional force it takes to pull something into a conduit" is based upon industry publications.

ECF No. 94-2 at 103-04. He was then asked if "the coefficient of friction" in his report referred

"to the amount of friction that will be caused by installing the cable in the [C]onduit with some

sand in it." Id. at 104. Mr. Dorwart confirmed that it did, but when asked where that was in his

report, he explained that it "really didn't come up." Id. Following that answer, Mr. Dorwart

noted that he wanted to "amend[ ]" his answer and added that he "did comment in [his] report

with respect to[ ] if you're pulling anything through the [C]onduit, and there's sand in the

[C]onduit, you will effectively lock up whatever you're pulling through." Id. at 105. Mr. Dorwart

stated that such an effect is "called a camlock-type of procedure" and although he did not "list it

as friction" in his report, he "describe[d] it as a camlock, which is a product of building a pile of

sand in front of what you're pulling." Id.

Mr. Dorwart further explained the mechanics of a "camlock effect," whereby a buildup of

sand in the Conduit will cause anything pulled through the Conduit to lock in place. See id. at

105-06, 109-10. Mr. Dorwart testified that, as "a product of sand and friction," the presence of

sand "will effectively lock up whatever [is] pull[ed] through" the Conduit. Id. at 105. Mr.

Dorwart was asked where in his expert report that explanation was contained and Mr. Dorwart

stated that the "only reference" he could find was to his discussion in the report about the

inability of "the cleaning probes" to "penetrate the sand barrier." Id. at 105-06. Mr. Dorwart

explained that "if you have no penetration, there's a cause for the penetration" and although he

"did not describe the mechanics" of that effect in his report, the effect was known as the camlock

effect. Id. at 106-07, 110. He further added that he did not quantify the amount of sand in the

Conduit because, given the camlock effect, "[i]t only takes enough [sand] to be plowed up in

6

front of the cable" to create the blockage and that could be "probably a cubic foot or less." Id. at

109. Mr. Dorwart elaborated that he did not calculate the amount because he "assum[ed] maybe

incorrectly that locking up a pressure washer and keeping it from advancing," as occurred here,

"would be sufficient to demonstrate that there was a lock – a blockage in there." Id. at 110.

In his supplemental report, Mr. Dorwart details the camlock effect and explains how sand

and debris buildup in the Conduit results in tools attempting to pass through the Conduit to lock

in place. See ECF No. 94-4 at 3-6. Mr. Dorwart explains that his supplemental report does not

change his ultimate opinion that Plaintiff failed to secure the ends of the Conduit, causing debris

and sand to enter the Conduit. See id. at 2.

Plaintiff contends that the supplemental report of Ms. Mosier is untimely and an improper

attempt to bolster her deposition testimony and rebut Plaintiff's expert. ECF No. 93 at 3; ECF

No. 107 at 8. As to Mr. Dorwart, Plaintiff similarly argues that his supplemental report is an

untimely attempt to expand and bolster Mr. Dorwart's deposition testimony, and the

supplemental report does not rely on new or unknown information that was not available at the

time of the deposition. See ECF No. 94 at 3.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(a)(2) governs expert disclosures. Under Rule 26, an

expert witness must provide a written report that includes, among other things, "a complete

statement of all opinions the witness will express and the basis and reasons for them;" and "the

facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). All

expert witness disclosures must be made "at the times and in the sequence that the court orders."

Fed. R. Civ. P. 26(a)(2)(D). As explained in the Advisory Committee notes, Rule 26(a) "requires

that persons retained or specially employed to provide expert testimony . . . must prepare a

detailed and complete written report, stating the testimony the witness is expected to present

during direct examination, together with the reasons therefor." Rule 26(a)(2)(B) Advisory

Committee Notes on 1993 amend. ¶ (2)(B). "The purpose of the rule is to prevent the practice of

'sandbagging' an opposing party with new evidence." Ebewo v. Martinez, 309 F. Supp. 2d 600,

607 (S.D.N.Y. 2004) (citations omitted).

Rule 26 also imposes a continuing obligation on parties to supplement or correct expert

disclosures "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). Specifically, under Rule 26(e), "a

party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure

or response: (A) in a timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect, and if the additional or corrective information

has not otherwise been made known to the other parties during the discovery process or in

writing." Id. And, for an expert witness, the "duty to supplement extends both to information

included in the report and to information given during the expert's deposition." Fed. R. Civ. P.

26(e)(2).

"[E]xperts are not free to continually bolster, strengthen, or improve their reports by

endlessly researching the issues they already opined upon, or to continually supplement their

opinions." Sandata Techs., Inc. v. Infocrossing, Inc., Nos. 05 Civ. 9546, 06 Civ. 1896 (LMM)

(THK), 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007). If an expert's report "does not rely

[on] any information that was previously unknown or unavailable to him," it is not an

appropriate supplemental report under Rule 26. Lidle v. Cirrus Design Corp., No. 08 Civ. 1253

(BSJ) (HBP), 2009 WL 4907201, at *6 (S.D.N.Y. Dec. 18, 2009). However, "preclusion of an

expert report can be a harsh sanction." <u>Sandata Techs., Inc.</u>, 2007 WL 4157163, at *7. "In determining whether preclusion is appropriate, courts must consider: (1) the reasons for the delay in providing the evidence; (2) the importance of the evidence precluded; (3) the prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance" (the <u>Softel</u> factors). <u>Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.</u>, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (citing <u>Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.</u>, 118 F.3d 955, 961 (2d Cir. 1997)). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." <u>Outley v. City of New York</u>, 837 F.2d 587, 591 (2d Cir. 1988).

As preclusion of evidence is a "harsh remedy," it "should be imposed only in rare situations." <u>Izzo v. ING Life Ins. & Annuity Co.</u>, 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (quoting <u>Update Art, Inc. v. Modiin Publ'g, Ltd.</u>, 843 F.2d 67, 71 (2d Cir. 1988)). Put differently, courts should impose alternative sanctions where such sanctions suffice to cure any prejudice from the improper supplemental report and render the discovery violation substantially harmless. <u>See, e.g.</u>, <u>Simo Hldgs. Inc. v. Hong Kong uCloudlink Network Tech. Ltd.</u>, 354 F. Supp. 3d 508, 510-11 (S.D.N.Y. 2019) (explaining that "precluding testimony is a drastic and disfavored measure" and alternative remedies can be sufficient to "render [untimely expert reports] substantially harmless").

### DISCUSSION

Ms. Mosier's and Mr. Dorwart's supplemental reports are not proper supplementations under Rule 26(e). But a review of the <u>Softel</u> factors weighs against the drastic remedy of

9

precluding Defendant's use of the reports. Because remedies short of preclusion will address any

prejudice to Plaintiff caused by the improper supplemental reports, Plaintiff's motion to strike

the reports is denied.

     A.  Rachel Mosier

Plaintiff seeks to preclude Ms. Mosier's supplemental report because it is an untimely

and improper supplementation that does not rely on "any new information that was not available

at the time [Ms. Mosier] gave her deposition." See ECF No. 93 at 3. The crux of Plaintiff's

argument is that Ms. Mosier's supplemental report is an improper rebuttal opinion, responding to

the criticism of Ms. Mosier's expert opinion raised by Plaintiff's expert and discussed during Ms.

Mosier's deposition. See ECF No 107 at 4-5, 8. In response, Defendant contends that Ms.

Mosier's supplemental report was a necessary disclosure under Rules 26(a)(2)(E) and 26(e)(2).

See ECF No. 95 at 1. Defendant argues that Ms. Mosier's supplemental report "directly

address[es] a question" from her deposition. ECF No. 107 at 19.

An expert is required to supplement her original report if "the expert subsequently learns

of information that was previously unknown or unavailable, that renders information previously

provided in an initial report inaccurate or misleading because it was incomplete." Sandata

Techs., Inc., 2007 WL 4157163, at *4. The duty to make supplemental disclosures under Rule 26

"extends both to information included in the report and to information given during the expert's

deposition." Fed. R. Civ. P. 26(e)(2). Supplemental expert disclosures are due at the time of the

parties' pretrial disclosures. Id.

The duty to supplement, however, "does not give parties a free pass to supplement reports

whenever they want." In re Terrorist Attacks on Sept. 11, 2001, No. 3 Md. 01570 (GBD) (SN),

2023 WL 2366854, at *3 (S.D.N.Y. Mar. 6, 2023) (internal quotation marks and citations omitted). A proper supplementation, therefore, only extends to reports "that address matters within the scope of the initial expert report and rely on information previously unknown or unavailable" to the expert. Id. (holding that supplemental expert report espousing new opinions not discussed in previous reports fell outside the scope of expert's original opinions and was therefore not proper under Rule 26(e)) (internal quotation marks and citation omitted).

In her expert report, Ms. Mosier did not have a discussion concerning the pulling eye (or pulling head) of the cable used in the project here. See ECF No. 93-1. During her deposition, Ms. Mosier testified that she had "not seen the cutaway of the pulling eye" of the cable (ECF No. 93-2 at 23) and that she understood the maximum allowable pulling tension for the cable to be 60,000 pounds, based on secondhand information she learned from other engineers on the project (id. at 31). Ms. Mosier also testified that she did not "offer an opinion on the pulling tension of the cable" in her expert report. Id. at 28. She further testified that with a single-helix armor wire cable, as was used in this project, it is typical to pull using the cable's conductor (or core) and not the armor wire. Id. at 21-25.

After her deposition, Ms. Mosier reviewed for the first time a diagram of the cable's pulling head and a document from the cable's manufacturer showing the allowable pulling tension for the cable. See ECF No. 93-4 at 2-3. As a result of reviewing those documents, Ms. Mosier learned that the armor wire cable in this project was pulled by the armor wire (and not the cable's conductor or core, as she had testified during her deposition). See id. at 3. In her supplemental report, Ms. Mosier explained that the fact that the armor wire cable was pulled by the armor wire did not alter her opinion because it did not alleviate the concern about subjecting

11

the cable to excess pulling tension. See id. at 3-4. As she explained in her supplemental report, the cable's actual allowable pulling tension, as determined by the manufacturer, was 36,869 pounds, and she would expect the actual pulling tension to have been greatly exceeded if the pull had been attempted prior to properly cleaning the Conduit. Id. at 4-5.

Defendant contends that because the diagram of the pulling head and the table showing the actual allowable pulling tension of the cable were personally unknown to Ms. Mosier—despite the materials being in Defendant's possession—Ms. Mosier's supplemental report relies on "previously unknown" information as required under Rule 26(e). See ECF No. 107 at 19; see also Sandata Techs., 2007 WL 4157163, at *4 (explaining that "if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete, . . . the duty to supplement arises."). But courts have held that where experts submit supplemental reports and the only new information relied on is information that was in the retaining party's possession, that does not constitute "previously unknown" information for purposes of Rule 26(e). See Lidle, 2009 WL 4907201, at *6 (holding that materials within retaining party's control had "always been available to [the party's] experts" where the retaining party "make[s] no claim that [expert] was unable to secure [the materials] prior to the submission of his opening report"). Defendant does not offer any explanation for why Ms. Mosier was unable to review the diagram of the pulling head from January 2020 or the table with the allowable pulling tension before the submission of her opening report and deposition. See ECF No. 95 at 2.

Regardless of whether the documents were "previously unknown" to Ms. Mosier, her subsequent discovery and review of these documents did not trigger a duty to supplement her

12

expert report, because her report did not include opinions on the pulling head configuration or the calculated pulling tension of the cable. See, e.g., ECF No. 93-1; ECF No. 93-2 at 28; see also In re Terrorist Attacks on Sept. 11, 2001, 2023 WL 2366854, at *3 (holding that supplemental report with "content [that] falls decidedly outside the scope of [original reports]" was not proper under Rule 26(e)). Indeed, Ms. Mosier testified that she was not retained by Defendant to offer an opinion on the pulling tension of the cable. See ECF No. 93-2 at 28. Her supplemental report therefore does not "address matters within the scope of the initial expert report," as required for a supplemental report to be proper under Rule 26(e). In re Terrorist Attacks on Sept. 11, 2001, 2023 WL 2366854, at *3 (internal quotation marks and citation omitted).

Even though Ms. Mosier's supplemental report was not a required disclosure under Rule 26(e)(2), its untimely disclosure is nevertheless harmless. Rule 37(c) designates exclusion as the default sanction for any violation that was not "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). A court exercising its considerable discretion to order exclusion must consider the Softel factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997) (citing Outley v. City of New York, 837 F.2d 587, 590-91 (2d Cir. 1988)).

Here, Defendant explains that Ms. Mosier's review of her deposition testimony prompted her to prepare the supplemental report, which was filed six weeks after the close of expert discovery. See ECF No. 107 at 19. Expert discovery closed very shortly after Ms. Mosier's deposition, not allowing enough time for Ms. Mosier to have reviewed her deposition testimony

and prepare a supplemental report prior to the close of expert discovery. Defendant has thus

proffered a reasonable explanation for its failure to submit the report prior to the close of expert

discovery. See Dooley v. United States, 577 F. Supp. 3d 229, 234 (S.D.N.Y. 2021) (finding that

preclusion of untimely report was inappropriate where expert "provide[d] a reasonable

explanation for why the supplemental report was issued"). The information contained in Ms.

Mosier's supplemental report was intended by Defendant to serve as "a correction of her

deposition testimony" while "not changing" her underlying opinion that the Conduit "was not in

the condition to pull [a] cable through." ECF No. 107 at 20-21. Stated differently, Ms. Mosier's

opinion concerning the condition of the Conduit remains unchanged following her supplemental

report. See Cedar Petrochemicals, Inc., 769 F. Supp. 2d at 279 (holding that supplemental report

that did not offer any new opinions and "did not alter th[e expert's] opinion [in the original

report]" was harmless) (internal quotation marks and citation omitted). Additionally, although

expert discovery closed, a continuance is feasible because the Court has not yet set a schedule for

summary judgment motions and a trial is therefore not imminent. See, e.g., Coene v. 3M Co.,

303 F.R.D. 32, 45-46 (W.D.N.Y. 2014) (reopening discovery period instead of precluding expert

opinion where summary judgment briefs were pending and "no trial date ha[d] been set"); see

also Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D.

147, 162 (S.D.N.Y. 2012) (applying Softel factors to case where party made inadequate Rule

26(a)(1)(A)(iii) disclosure and failed to provide timely supplementation under Rule 26(e) and

holding that "[w]ith no trial date yet set, this Court sees no reason why a continuance would not

be feasible here").

14

Moreover, any prejudice to Plaintiff from Ms. Mosier's supplemental report and the reopening of expert discovery can be cured by affording Plaintiff the opportunity to re-depose Ms. Mosier with Defendant bearing the cost of that deposition. See Coene, 303 F.R.D. at 43-46 (holding that supplemental report that opined on new causes for an injury in toxic tort case was improper under Rule 26(e) but finding that reopening discovery was proper sanction instead of preclusion); Town & Country Linen Corp. v. Ingenious Designs LLC, No. 18 Civ. 5075 (LJL), 2020 WL 5646154, at *2-3 (S.D.N.Y. Sept. 22, 2020) (holding that appropriate remedy for untimely expert report was granting short continuance for redeposition and ordering payment of reasonable expenses of continued deposition). Given the procedural posture of the case, a short reopening of expert discovery is feasible and preferable to the extreme sanction of preclusion. See Town & Country Linen Corp., 2020 WL 5646154, at *2-3; Gref v. Am. Int'l Indus., No. 20 Civ. 5589 (GBD) (VF), 2024 WL 2138160, at *4 (S.D.N.Y. Apr. 24, 2024) (holding that "prejudice to Defendants" from untimely report "can be remedied by a continuance and the reopening of [the expert's] deposition"); Cedar Petrochemicals, Inc., 769 F. Supp. 2d at 278-79 (holding that "[b]ecause this supplemental submission is harmless, the report will not be precluded" even though "the report does not rely on previously unknown information, and thus is not a 'supplemental' report under Rule 26").

In sum, Ms. Mosier's supplemental report is untimely. Nevertheless, any prejudice to Plaintiff from its untimely disclosure can be remedied by allowing Plaintiff to re-open Ms. Mosier's deposition, to permit Plaintiff an opportunity to question her about the contents of the supplemental report, at Defendant's expense.

B. Brian Dorwart

Plaintiff seeks to preclude Mr. Dorwart's supplemental report, arguing that it is untimely and substantively improper because it addresses "the ability to pull a cable through the [C]onduit," which is "outside the scope of his original opinion." See ECF No. 94 at 3; ECF No. 107 at 15. Defendant argues that Mr. Dorwart was required to file a supplemental report expanding on "the mechanics of dilation and contraction of sand," and even if the supplemental report was not timely, it is nonetheless harmless because Mr. Dorwart "doesn't ultimately change his opinion." See ECF No. 107 at 24-25.

As an initial matter, Mr. Dorwart's supplemental report is not a required supplemental disclosure under Rule 26(e). Supplementation is proper when it "address[es] matters within the scope of the initial expert report and rel[ies] on information previously unknown or unavailable." In re Terrorist Attacks on Sept. 11, 2001, 2023 WL 2366854, at *3 (internal quotation marks and citation omitted). During his deposition, Mr. Dorwart referenced by name the mechanical phenomenon, the "camlock effect," that he believed explained the obstruction discovered in the Conduit in April 2021, and which he had not described in his expert report. See ECF No. 94-2 at 105-06. Mr. Dorwart did not describe the camlock effect and related mechanical principles in his expert report because he "assum[ed]" that the blockages he described in his expert report, such as the obstruction that occurred during the April 13, 2021 cleaning operation (ECF No. 94-1 at 17-18), "would be sufficient to demonstrate that there was a lock" in the Conduit caused by a buildup of sand and friction (ECF No. 94-2 at 110). At his deposition, Mr. Dorwart realized that he omitted from his expert report an explanation of the camlock effect and related mechanical principles (id. at 105-06), but Mr. Dorwart did not learn any new information, previously

16

unknown or unavailable to him, that would trigger a duty to supplement under Rule 26(e). Mr.

Dorwart's supplemental report was therefore not proper supplementation under Rule 26(e). See

Cedar Petrochemicals, Inc., 769 F. Supp. at 278 ("If an expert's report does not rely on any

information that was previously unknown or unavailable to him, it is not an appropriate

supplemental report under Rule 26.") (cleaned up) (internal quotation marks and citation

omitted).

Regardless, under the Softel factors, Defendant's disclosure is harmless. Defendant

explains that after Mr. Dorwart reviewed his deposition, he felt he needed to further explain the

camlock effect and related mechanical principles "to address information given during his

deposition that . . . he believed was necessary and underlie his ultimate opinion." See ECF No.

107 at 19, 25. Given that expert discovery closed three days after Mr. Dorwart's deposition, it

would not have been feasible for Mr. Dorwart to review his deposition testimony and prepare a

supplemental report before the close of expert discovery. Defendant has proffered a reasonable

explanation for its failure to submit the report prior to the close of expert discovery. See Dooley,

577 F. Supp. 3d at 234 (holding that "reasonable explanation for why the supplemental report

was issued" weighed against preclusion). Additionally, the information contained in Mr.

Dorwart's supplemental report "[i]s necessary" to his ultimate opinion, because it provides the

mechanical principles underlying his conclusion that there was a blockage in the Conduit. See

ECF No. 107 at 25. Mr. Dorwart's supplemental report is therefore important to Defendant's

counterclaims, which weighs against preclusion. See Softel, Inc., 118 F.3d at 961 (listing

"importance of the [expert opinion]" as a factor courts consider to determine whether to preclude

expert evidence submitted in violation of Rule 26).

With regards to the prejudice to Plaintiff, Plaintiff argues that Mr. Dorwart's

supplemental report is prejudicial because it provides an opinion on whether the cable was able

to pass through the Conduit, which contradicts Defendant's representation that Mr. Dorwart was

not "opining on the ability to pull the cable in question on the project through the [C]onduit." See

ECF No. 94 at 3-4; ECF No. 94-2 at 15. But Plaintiff's argument mischaracterizes Mr. Dorwart's

supplemental report. Mr. Dorwart provides an explanation of the mechanical phenomenon—the

camlock effect—underpinning his opinion that Plaintiff failed to properly secure the ends of the

Conduit, "resulting in sand entering [the] Conduit" and ultimately the formation of an

"obstruction" that prevented Defendant from successfully cleaning the Conduit in April 2021.

ECF No. 94-1 at 3, 8, 11, 14, 17, 19. Mr. Dorwart's supplemental report "is more explicit about

[the mechanics] upon which he based his initial conclusions, but he did not alter this position and

did not include a new opinion which had not previously been disclosed." Cedar Petrochemicals,

Inc., 769 F. Supp. 2d at 279 (internal quotation marks and citation omitted); see also Lack v.

Caesar's Entm't Corp., No. 20 Civ. 5394 (VB), 2024 WL 1995220, at *2 (S.D.N.Y. May 6,

2024) (denying motion to preclude untimely supplemental report because the expert had "not

changed his methodology or disclosed a new theory").

Because a trial date has not yet been set, a continuance is feasible and preclusion of Mr.

Dorwart's supplemental report is not necessary to remedy any prejudice to Plaintiff. See

Houlihan v. Invacare Corp., No. 04 Civ. 4286 (NGG) (MDG), 2006 WL 1455469, at *2

(E.D.N.Y. May 24, 2006) (denying motion to preclude evidence related to supplemental expert

report but extending expert discovery where a pretrial schedule had not been ordered and a trial

date had not been set); see also Lack, 2024 WL 1995220, at *3 (denying motion to preclude

untimely supplemental expert report despite a scheduled trial five weeks away because five weeks was "sufficient time for plaintiff to prepare to confront and cross-examine [the expert] regarding the information in the [s]upplemental [r]eport"). In short, allowing Plaintiff to reopen Mr. Dorwart's deposition in order to question him about the substance of his supplemental report, at Defendant's expense, can cure any potential prejudice from Defendant's reliance on the supplemental report.

## CONCLUSION

For the reasons discussed, Plaintiff's motions to strike Defendant's supplemental disclosures are **DENIED**. Expert discovery is hereby extended to December 31, 2024 for the sole purpose of affording Plaintiff the opportunity to re-depose Ms. Mosier and Mr. Dorwart for an additional two hours each to question the witnesses about the materials put forth in their respective supplemental reports. Defendant shall pay the reasonable expenses, including the fees incurred by Plaintiff's counsel, for taking and preparing for each deposition.

**SO ORDERED.**

DATED:    New York, New York
          October 30, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge
United States Magistrate Judge

19